# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

KALI S. SUNTOKE,

                      Petitioner,             :     Case No. 2:15-cv-1354

        - vs -                          District Judge James L. Graham
                                        Magistrate Judge Michael R. Merz

Warden,
  Chillicothe Correctional Institution
                                     :
                    Respondent.

# REPORT AND RECOMMENDATIONS

       This habeas corpus case was brought *pro se* by Petitioner Kali Suntoke to obtain relief from his conviction in the Muskingum County Court of Common Pleas on multiple counts of pandering obscenity involving a minor.  The case is before the Court for decision on the merits on the Petition (ECF No. 8), the Return of Writ and State Court Record (ECF No. 14), and Petitioner's Traverse (ECF No. 57).  The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 65).

## Procedural History

       Petitioner was indicted by the Muskingum County Grand Jury on April 26, 2012, on thirty-two counts of pandering obscenity involving a minor as a second degree felony in violation of Ohio Revised Code § 2907.321(A)(1) and one count of pandering obscenity involving a minor as a fourth degree felony in violation of Ohio Revised Code § 2907.321(A)(5)(Indictment, State

1

Court Record, ECF No. 14-1, PageID 651, *et seq*.). On the date set for trial, April 9, 2013, Petitioner agreed to plead no contest to Counts 1-9, 14-15, 20-21, 28-29, and 32 with the remainder of the charges to be dismissed with an agreed sentence of seven years' imprisonment. (Plea Agreement, State Court Record, ECF No. 14-1, PageID 716-18.) Without any explanation of his reasons, Suntoke moved *pro se* to withdraw his no contest plea before sentencing (Motion, State Court Record, ECF No. 14-1, PageID 719-20). The trial court denied that request and on June 13, 2013, imposed the agreed sentence. (Entry, State Court Record, ECF No. 14-1, PageID 725-27.)

Represented by new counsel, Petitioner appealed to the Fifth District Court of Appeals which affirmed the conviction. *State v. Suntoke,* 2014-Ohio-1431, 2014 Ohio App. LEXIS 1333 (5th Dist. Apr. 2, 2014), appellate jurisdiction declined, 140 Ohio St. 3d 1416 (2014). Suntoke filed an application to reopen his direct appeal to raise claims of ineffective assistance of appellate counsel which the Fifth District rejected for procedural defects. *State v. Suntoke*, Case No. CT2013-0032 (Ohio App. 5th Dist. Jul. 24, 2014)(unreported; copy at State Court Record, ECF No. 14-1, PageID 876-77.)

Petitioner filed a motion for delayed appeal which was denied because he had already had a direct appeal. *State v. Suntoke*, Case No. CT2014-0036 (Ohio App. 5th Dist. Sep. 22, 2014)(unreported; copy at State Court Record, ECF No. 14-1, PageID 920-21).

Suntoke filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 raising claims of ineffective assistance of trial counsel. The trial court dismissed the petition and the Fifth District affirmed. *State v. Suntoke,* 2014-Ohio-3320, 2014 Ohio App. LEXIS 3248 (5th Dist. Jul 21, 2014)(copy at State Court Record ECF No. 14-1, PageID 1047-53), appellate jurisdiction declined, 140 Ohio St. 3d 1522 (2014). After filing an unsuccessful motion to dismiss the indictment, Suntoke filed his Petition in this Court on July 6, 2015. The Petition comprises 410

pages (ECF No. 8). While it includes the standard form required to be used for § 2254 cases (PageID 185-203), the substance of the pleading comprises the almost four hundred pages of attachments, which intermix arguments and exhibits. Amongst those pages, Suntoke pleads the following Grounds for Relief, denominated as "Assignment of Errors":

> **GROUND ONE:** The Grand Jury was prejudiced and biased due to the prosecutorial misconduct which led to the prejudice of the Petitioner.
>
> **GROUND TWO**: Petitioner' sentence of Seven years is grossly disproportionate and inconsistent to the sentences imposed on similar offenders for similar offenses, hence the State of Ohio fails to comply with the United States Supreme Court's proportionality analysis in violation of the 8th and the 14th Amendments of the United States Constitution.
>
> **GROUND THREE**: The Trial Judge was completely biased and prejudiced against the Petitioner on account of his race and religion.
>
> **GROUND FOUR:** Both the Trial Counsels and the Appellate Counsel were ineffective and inadequate pursuant to *Strickland v/s. Washington* to the prejudice of the Petitioner.
>
> **GROUND FIVE**: The Petitioner was deprived of his liberty without an Arrest Warrant in violation of *Illinois v/s Gates*, 462 US 213.
>
> **GROUND SIX**: Detective Hill misled the Judge in his Affidavit for the issue of a Search Warrant in violation of *United States v/s Leon*, 468 US 897.
>
> **GROUND SEVEN**: There is no evidence in the Plea Colloquy regarding a factual basis for the Plea.
>
> **GROUND EIGHT:** The Trial Court failed to state the elements of the offense during the Petitioner's Plea Colloquy in violation of *Henderson v/s Morgan*, 426 US 637.
>
> **GROUND NINE**: The Trial Court violated *North Carolina v/s Alford* 400 US 25 by not convicting the Petitioner on a lesser included offense which was supported by the evidence offered by the State.

**GROUND TEN:** The Trial Court failed to comply with Ohio Criminal Rule 11 (C)(2)(c) and thus failed to comply with the strict mandates of *Boykin v/s Alabama*, 395 US 336.

**GROUND ELEVEN:** Detective Hill violated *Gerstein v. Pugh* 420 US 103, by not obtaining a determination of probable cause after the warrantless arrest of the Petitioner.

**GROUND TWELVE**: The Trial Court violated the Petitioner's Speedy Trial Rights.

**GROUND THIRTEEN:** Denial of a Continuance by the Trial Judge violated the Petitioner's Constitutional Rights.

**GROUND FOURTEEN:** Trial Counsels were ineffective and committed prejudicial errors.

**GROUND FIFTEEN**: Prejudicial error was committed against the Petitioner by the Zanesville Police Department and Agent Bryant when they violated the Petitioner's Article 36 of the Vienna Convention to which treaty the United States is a signatory.

**GROUND SIXTEEN:** The Petitioner's "reasonable expectation of privacy" rights were violated when the Franklin County Task Force hacked into the Petitioner's personal home laptop computer.

**GROUND SEVENTEEN:** Trial Counsel were ineffective and inadequate and then committed prejudicial error when they failed to file a Motion pursuant to Criminal Rule No. 12(C) regarding an '*Ignorantia Facti Excusat*' Issue on Petitioner's behalf.

**GROUND EIGHTEEN:** The Petitioner's constitutional rights under the Eighth Amendment were violated as the Petitioner's sentence amounted to cruel and unusual punishment under the totality of circumstances.

**GROUND NINETEEN**: The Zanesville Municipal Court made an unreasonable factual determination pertaining to Petitioner's Waiver of the Preliminary hearing.

(Petition, ECF No. 8-2, PageID 230-31.)

Without expressly discussing any review under Habeas Rule 4, Magistrate Judge Deavers issued an Order for Answer a week after the Petition was filed (ECF No. 9). The Answer/Return

of Writ was filed October 29, 2015 (ECF No. 14).  Petitioner took extensions of time for almost a

year and a half until January 9, 2018, to file his Traverse (ECF No. 57) which is 475 pages long.


**Generally Applicable Law**


### Scope of Habeas Relief


Because of the prolixity of the pleadings, the Magistrate Judge will set out here general

principles of habeas corpus law which are applicable to many of the grounds for relief.

Petitioner complains at many places in his pleadings of failures of the Ohio courts to follow

state law in processing his case.  Federal habeas corpus is available only to correct federal

constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463

U.S. 939 (1983).    "[I]t is not the province of a federal habeas court to reexamine state court

determinations on state law questions.  In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.)

152, 160 (1825)(Marshall Ch. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar

concurring).

Habeas relief may be available where a violation of state law "amounts to a fundamental

miscarriage of justice or a violation of the right to due process in violation of the United States

Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008), *cert denied*, 129 S. Ct. 1991

(2009).  "State law errors may warrant habeas relief if the errors 'rise for some other reason to the

level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (2010), *quoting Barclay v. Florida*, 463 U.S. 939, 957-58 (1983). However, the burden of showing that a state law violation rises to the level of a federal constitutional violation is on the petitioner. Just because some process appears to be commanded by state statute or rule does not mean that it is required by the Due Process Clause of the Fourteenth Amendment.

### Evidence Supporting Habeas Relief

Petitioner's pleadings have hundreds of pages of attachments, some of them generated in the state courts that handled his case and some from completely outside the record. In addition, he makes many factual assertions which do not reference any source at all. As the undersigned pointed out in recently denying Petitioner's Motion for Evidentiary Hearing, a federal habeas court must decide whether that state courts committed constitutional error by examining the record that was before those courts when they decided any federal constitutional claims presented to them. *Cullen v. Pinholster*, 563 U.S. 170 (2011). *Pinholster* also applies to matter sought to be added to the record by expanding what the Respondent has filed.

### Procedural Default

Respondent asserts that this Court is barred from considering the merits of all of Petitioner's grounds for relief because of procedural defaults of various sorts that he made in presenting those claims to the Ohio courts. Petitioner has a number of responses which will be discussed as they arise.

The general law of procedural default in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., Beard v. Kindler, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. Dretke v. Haley, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." Coleman, 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "[E]ven if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) abrogated on other grounds, *Stone v. Moore*, 644 F.3d 342 (6th Cir. 2011)("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not"). The corollary to this rule is that where a petitioner raised a

claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

Ohio requires ineffective assistance of trial counsel claims which depend on the trial record to be raised on direct appeal, but claims depending on evidence outside the record to be raised by petition for post-conviction relief pursuant to Ohio Revised Code § 2953.21. Under that law, ineffective assistance of trial counsel claims or indeed any constitutional claims that depend on evidence outside the appellate record must be raised in a petition for post-conviction relief because evidence cannot be added to the record on direct appeal. *State v. Hooks*, 92 Ohio St. 3d 83, 83-84 (2001); *State v, Hartman*, 93 Ohio St. 3d 274, 299 (2001); *State v. Keith*, 79 Ohio St. 3d 514, 536 (1997); *State v. Scott*, 63 Ohio App. 3d 304, 308 (1989); *State v. Smith*, 17 Ohio St. 3d 98, 101, n.1 (1985).

Conversely, constitutional claims including ineffective assistance of trial counsel claims which are supported by the appellate record must be raised on direct appeal and will be barred by *res judicata* if attempted to be raised later in post-conviction. *State v. Reynolds*, 79 Ohio St. 3d 158, 161 (1997); *State v. Steffen*, 70 Ohio St. 3d 399, 410 (1994); *State v. Lentz*, 70 Ohio St. 3d 527 (1994); *In re T.L.*, 2014-Ohio-1840, ¶ 16, 2014 Ohio App. LEXIS 1804 (8th App. Dist. 2014).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott*

*v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

It is a common misconception among habeas petitioners, shared by Petitioner here, that the "fundamental miscarriage of justice" exception to procedural default is separate from proof of actual innocence.  The Supreme Court has expressly held that "avoiding a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence." *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998); see *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  Thus, the "fundamental miscarriage of justice" and the "actual innocence" exceptions are one and the same.

**Ineffective Assistance of Counsel**

At many places in the pleadings where Respondent asserts a claim is procedurally defaulted, Petitioner responds that the default was caused by ineffective assistance of trial counsel or ineffective assistance of appellate counsel.

The Sixth Amendment requires appointment of trial counsel for any indigent criminal defendant charged with an offense which carries a possible incarceration sentence. *Powell v. Alabama*, 287 U.S. 45 (1932)(capital cases); *Gideon v. Wainwright*, 372 U.S. 335 (1963)(felony cases); *Argersinger v. Hamlin,* 407 U.S. 25 (1972)(misdemeanor cases where imprisonment is a possibility); *Alabama v. Shelton,* 535 U.S. 654 (2002)(even if sentence is suspended).

The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna,* 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner,* 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh,* 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of

appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

Ineffective assistance counsel can serve to show excusing cause and prejudice under *Maupin, supra,* but only when the ineffective assistance claim has itself been properly pursued in the state courts, i.e, when that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that a procedurally defaulted ineffective assistance of counsel claim cannot serve as cause for the default of another claim.)

# Analysis

**Introductory Matter in the Traverse**

### Effect of Pro Se Status

Petitioner begins his Traverse with seven pages of argument on the preferential treatment to be given *pro se* pleadings over those prepared by counsel (ECF No. 57, PageID 1616-22). The Court is aware of its duty to read *pro se* pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993). However, contrary to the assertion made at PageID 1617, *pro se* status does not excuse procedural default. See *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

**Statutory Construction**

Suntoke follows with a disquisition on statutory construction, most of which is unexceptionable,[1] but not tied to any particular point in the case (Traverse, ECF No. 57, PageID 1624-29). He prefaces this with a discussion of the supposed legislative intent behind Ohio Revised Code § 2907.321 with no reference to any source from which the accuracy of these representations could be checked.

Petitioner correctly notes, however, that the possibilities of creating and communicating ideas and images in 1977 when the statute was passed were far different from the world in which we exist today. Before the internet existed, the traffic in child pornography largely consisted of circulating through the mail images created in Denmark during the approximately four years when creation of such images was legal in that country. The Federal Bureau of Investigation and the United States Postal Service had largely suppressed that traffic before the internet and peer-to-peer file sharing were created. Petitioner asserts "that for almost more than 200 years, no similar law was passed by either federal or state governments." Petitioner is evidently unfamiliar with the Comstock Laws which were a set of federal acts passed by the United States Congress under the Grant administration along with related state laws. The "parent" act (Sect. 211) was passed on March 3, 1873, as the Act for the "Suppression of Trade in, and Circulation of, Obscene Literature and Articles of Immoral Use."[2]

---

[1] Except for being bold faced and underlined, which adds neither to its legibility nor its persuasiveness.
[2] See Encyclopedia Britannica article on the Comstock Act, available at https://www.britannica.com/event/Comstock-Act.

**Procedural History Corrections**

Petitioner offers corrections to the procedural history as recited in the Return.

Suntoke accuses the investigating officer, Special Agent Cameron Bryant, of bad faith, asserting that as a federal agent he was required to seek a search warrant from a federal judge (Traverse, ECF No. 57, PageID 1630). He cites no authority for that proposition and it is simply not the law. Federal agents are free to approach a state court judge for a warrant. See Fed. R. Crim. P. 41.

Suntoke says his attorney and not he who sought a competency evaluation in state court. The Magistrate Judge accepts the factual correction but finds it is immaterial to the case. The same is true of Suntoke's claim that he told attorney Van Horn to remove himself from the case and Van Horn asked for appointment of co-counsel Gregory Myers instead.

Other asserted corrections to the procedural history as recited in the Return are also immaterial. Petitioner offers many additional facts about the investigation without any reference to where those appear in the record.

**Procedural Default**

The general Procedural Default section of the Traverse covers thirty-five pages (ECF No. 57, PageID 1636-71). In general Petitioner claims he has committed no procedural defaults at all. *Id*. at PageID 1632. He claims that the Court has already determined under Habeas Rule 4 that his Petition has merit which he infers from issuance of the Order for Answer, although no express

Rule 4 findings are made in that Order. Then he accuses Respondent of failing to provide a proper answer under Habeas Rule 5. *Id*. at PageID 1637.

Petitioner asserts the "U.S. Supreme Court has consistently and repeatedly held that procedural defaults, *res judicata,* etc., can and should be excused if the Petitioner is able to prove" cause and prejudice or actual innocence or that "failure to consider the Petitioner's claims would result in a 'fundamental miscarriage of justice." (Traverse, ECF No. 57, PageID 1638.) What follows are many pages of case citations without reference to where they apply to this case. This Report will recommend specific applications with regard to individual grounds for relief.

**Ground One: Grand Jury Bias Caused by Prosecutorial Misconduct**

In his First Ground for Relief, Suntoke claims the grand jury that indicted him was biased due to prosecutorial misconduct (Petition, ECF No. 8-2, PageID 232-41). Most of what is written in this portion of the Petition complains of the investigative process which led up to issuance of a search warrant and Petitioner's theory that the statute under which he was convicted requires the State to prove that he created, reproduced, **and** published the obscene matter involved in the case.

Respondent defends against Ground One on the bases that (1) any defects in the grand jury process were waived by the plea of no contest, (2) the claim is procedurally defaulted because it was never presented to the state courts, and (3) there is no federal constitutional right to grand jury indictment for state crimes. (Return, ECF No. 14, PageID 618-19.)

Petitioner claims that prosecutorial misconduct consists of the prosecutor presenting two different sets of evidence, one to the grand jury and one to his attorney in discovery which he

claims is "established by the documentation submitted to this Honorable Court in the original Petition." (Traverse, ECF No. 57, PageID 1672.) Petitioner offers no suggestion as to where in the 410 pages which comprise his Petition the referenced documentation is to be found.

At this point in the Traverse, Suntoke states his theory of the proper interpretation of Ohio Revised Code § 2907.321, the statute he was convicted of violating. In relevant part that statute reads:

> **2907.321 Pandering obscenity involving a minor.**
>
> **(A)** No person, with knowledge of the character of the material or performance involved, shall do any of the following:
>
> **(1)** Create, reproduce, or publish any obscene material that has a minor as one of its participants or portrayed observers[.]

Petitioner believes that, in order to obtain an indictment and later a conviction, for violating this statute, "the State must prove ALL these elements and failure to prove all these THREE elements must lead to acquittal." (Traverse, ECF No. 57, PageID 1673.) At the same place, he concedes that because "[t]he statute has THREE elements, the State may elect which of the three elements the State intends to prove, yet, the State has elected to prove that the Petitioner violated all THREE elements viz. (a) create, (b) reproduce and (c) publish." But Petitioner makes no reference to anywhere that the State made such an election. The Indictment charges violation by creating, reproducing, **or** publishing. (See, e.g., Indictment, First Count, State Court Record, ECF No. 14-1, PageID 651.)

Respondent's first defense of Ground One is that there is no federal right to a grand jury indictment in state court. That defense is well taken. The Grand Jury Clause of the Fifth Amendment is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n.25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v.*

*Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). "[T]here is no constitutional right in a state prosecution to a grand jury indictment with particular specificity." *Haviland*, 467 F.3d at 534, citing *United States v. Cotton*, 535 U.S. 625, 627 (2002); *Rose v. Mitchell*, 443 U.S. 545, 557, n.7 (1979). "Due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Williams*, 467 F.3d at 535, quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

In his Traverse, Suntoke cites a footnote in *Branzburg* which quotes a 1964 survey showing that most States have the grand jury process (ECF No. 57, PageID 1676). While Ohio is one of those States, that does not elevate the grand jury to being a federal constitutional right.

Respondent's second defense is that Suntoke's no contest plea waives all preceding non-jurisdictional errors. (Answer, ECF No. 14, PageID 618.) Petitioner responds:

> The Petitioner maintains that both federal and state governments are jurisdictional and the failure to find a true Bill divests the Court of Jurisdiction over the Petitioner's sham Indictment is illegal and therefore must be quashed hence by the Respondent's own admission, the State of Ohio loses jurisdiction and as such *Pickett* [*United States v. Pickett*, 941 F.2d 411 (6th Cir. 1991)] is inapposite to the case at bar.

(Traverse, ECF No. 57, PageID 1676.) But the Muskingum County grand jury did return an indictment and Petitioner's opportunity to move for its dismissal expired when it was not raised before trial. See Ohio R. Crim. P. 12(C).

In the past, Ohio law held that "[a] judgment of conviction based on an indictment which [sic] does not charge an offense is void for lack of jurisdiction of the subject matter and may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding." *State v. Cimpritz,* 158 Ohio St. 490, 491 (1953), paragraph six of the syllabus. However, in *Midling v. Perrini*, 14 Ohio St. 2d 106 (1968), the Ohio Supreme Court held that the defense that an

indictment does not state an offense must be raised in the trial court and cannot be raised for the first time on appeal because it does not deprive the trial court of subject matter jurisdiction. See also *State v. Lowery*, 2011-Ohio-2827, ¶¶ 14-18 (Ohio App. 2nd Dist. June 10, 2011); *State v. Cochran*, 1995 Ohio App. LEXIS 5809 (Ohio App. 2nd Dist. Dec. 29, 1995); *State v. Burkitt,* 84 Ohio App. 3d 214 (Ohio App. 2nd Dist. 1993).

A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007); see also *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975). "[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012). After entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent nature of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012). A guilty plea constitutes a break in the chain of events leading up to it. *Tollett v. Henderson*, 411 U.S. 258 (1973). Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266. A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him. *McMann v. Richardson*, 397 U.S. 759 (1970); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Finally, Respondent asserts this claim is procedurally defaulted because it has never been presented to the Ohio courts. (Return, ECF No. 14, PageID 619). Petitioner's response is again to blame his attorneys without pointing out any place in the record where he submitted this particular complaint about his attorneys to the Ohio courts.

Suntoke correctly points out that a plea of no contest under Ohio law is not an admission of guilt but only of the facts in the charging instrument or, as here, in the stipulation. But the distinction from a plea of guilty makes no difference in terms of waiving prior constitutional error unless that error is preserved for appeal under Ohio R. Crim. P. 11, which did not happen here.

At the end of his argument on this Ground for Relief, Suntoke argues he was discriminated against on the basis of his race (which he does not identify), his religion (Zoroastrian, but he gives no indication how this fact was known to the trial judge), and foreign national origin. He also claims the grand jury was biased because it did not include any persons who shared these identities, resulting in a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986)(Traverse, ECF No. 57, PageID 1692). *Batson* forbids racial discrimination in the exercise of peremptory challenges at trial. Since there was no trial here, *Batson* is inapplicable.

Based on this analysis, Ground One should be dismissed with prejudice on the three defenses raised by Respondent.


**Ground Two: Disproportionate Sentence**


In his Second Ground for Relief, Petitioner asserts his sentence of seven years is grossly disproportionate to the offenses of conviction and inconsistent with sentences imposed on similar offenders for similar offenses (Petition, ECF No. 8-2, PageID 242). He begins by arguing that the

most serious offense the State could prove against him was possession of obscene matter involving children which, he claims, "is not a serious offense." Under Ohio and federal law, any criminal offense carrying a maximum penalty of more than six months imprisonment is classified in law as a serious offense. Under Ohio Revised Code § 2907.321(A)(5), possession of child pornography is a fourth degree felony which carries a "basic prison term" of six to eighteen months. Ohio Revised Code § 2929.14(A)(4).

Suntoke was, of course, convicted of many second degree felonies of reproducing child pornography. As he points out (ECF No. 8-2, PageID 243), the prison term for a second degree felony is two to eight years. He then lists many other crimes listed as second degree felonies under Ohio law and complains of being grouped with persons who commit kidnapping, theft, assault, etc. This grouping, Suntoke argues, shows that Ohio does not comply with United States Supreme Court decisions on proportionality. However, he cites not a single Supreme Court case in support of that proposition.

In fact, Supreme Court jurisprudence requiting proportionality has been effectively limited to declaring that nothing other than murder may be punished with death and juvenile offenders cannot be subjected to mandatory life imprisonment.

> The Eighth Amendment proportionality principle also applies to noncapital sentences. In *Rummel v. Estelle,* 445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133 (1980), we acknowledged the existence of the proportionality rule for both capital and noncapital cases, *id.*, at 271-274, and n. 11, but we refused to strike down a sentence of life imprisonment, with possibility of parole, for recidivism based on three underlying felonies. In *Hutto v. Davis*, 454 U.S. 370, 374, 70 L.Ed.2d 556, 102 S.Ct. 703, and n. 3 (1982), we recognized the possibility of proportionality review but held it inapplicable to a 40-year prison sentence for possession with intent to distribute nine ounces of marijuana. Our most recent decision discussing the subject is *Solem v. Helm*, 463 U.S. 277, 77 L. Ed. 2d 637, 103 S.Ct. 3001 (1983). There we held that a sentence of life imprisonment without possibility of parole violated the Eighth Amendment

> because it was "grossly disproportionate" to the crime of recidivism based on seven underlying nonviolent felonies. The dissent in *Solem* disagreed with the Court's application of the proportionality principle but observed that in extreme cases it could apply to invalidate a punishment for a term of years. *Id.*, at 280, n. 3. See also *Hutto v. Finney*, 437 U.S. 678, 685, 57 L.Ed.2d 522, 98 S.Ct. 2565 (1978) (dicta); *Ingraham v. Wright*, 430 U.S. 651, 667, 51 L.Ed.2d 711, 97 S.Ct. 1401 (1977) (dicta).

*Harmelin v. Michigan,* 501 U.S. 957, 997-98 (1991).  The Sixth Circuit "adheres to the 'narrow proportionality principle' for evaluating Eighth Amendment claims articulated in *Harmelin*." *United States v. Young,* 847 F.3d 328 (6th Cir. 2017), citing *United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010); *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994).

Federal sentences related to child pornography are more stringent and usually carry a maximum sentence of twenty years imprisonment.

Petitioner lists eighteen child pornography cases from Cuyahoga County which resulted in community control sentences or early judicial release from imposed prison terms (ECF No. 8-2, PageID 245-47).  Additional cases with more lenient sentences are listed from other counties, States, and federal jurisdictions.  *Id.* at PageID 247-53.  Petitioner gives no record reference for these citations nor does he even refer to any source outside the record from which they were obtained.

What Petitioner neglects to mention is that the seven-year prison term he received was an agreed sentence in the Plea Agreement.  Petitioner concludes in his Petition by asking this Court to "utilize the Proportionality analysis in this case."  *Id.* at PageID 254.

Respondent defends the Second Ground by claiming that it fails to state a federal constitutional claim and is barred by Petitioner's failure to raise the claim before his direct appeal to the Ohio Supreme Court (Return, ECF No. 14, PageID 619-21).

In his argument on this Ground for Relief, Petitioner indiscriminately cites federal cases

interpreting the United States Sentencing Guidelines as well as state cases requiring consistency of sentences. Neither of those sets of case law is relevant. Federal Sentencing Guidelines are not a matter of constitutional law and they are not even mandatory within the federal system. *United States v. Booker*, 543 U.S. 220 (2005).

The Magistrate Judge disagrees with the State's position that this claim is not cognizable in habeas corpus. As the quotation from *Harmelin, supra*, shows, the Eighth Amendment is indeed applicable to terms of imprisonment as well as death sentences. To establish an Eighth Amendment violation, a habeas petitioner must show that the state court sentence is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. But Petitioner has referenced no Supreme Court case law that would begin to suggest an agreed sentence of seven years is a grossly disproportionate sentencing for downloading more than 2000 images of child pornography.

Respondent's procedural default defense is also well taken. This Ground for Relief was available to be raised on direct appeal but was not. Suntoke blames this on ineffective assistance of appellate counsel, but procedurally defaulted that excuse when he failed to properly file his Ohio R. App. P. 26(B) application. See *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000), *supra*.

Petitioner argues that the procedural requirements for 26(B) applications are not firmly established and regularly followed; citing *Franklin v. Anderson*, 434 F 3d 412, 420-421(6th Cir. 2006). The *Franklin* court found that at the time Franklin's 26(B) application was before the Ohio courts, the timeliness provision of 26(B) was not being regularly enforced. However, that changed:

> By the time Landrum filed his Rule 26(B) motion in September 1998, "it was well established that claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals." *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (considering whether Rule 26(B) was an independent and adequate state procedural rule as of May 1998).

> Since at least 1996, Ohio law has provided sufficient guidance on what constitutes "good cause" for a late filing under Rule 26(B). *Id.* at 578.

*Landrum v. Mitchell,* 625 F.3d 905 (6th Cir. 2010). Thus, *Landrum* is distinguished from *Franklin* by the change in enforcement practice between the two cases.. Moreover, *Franklin* and *Landrum* are both capital cases and the Sixth Circuit has long acknowledged that the timeliness requirement in 26(B) is an adequate and independent state rule in non-capital cases. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

The procedural defect enforced against Suntoke was:

> Defendant-appellant, in the case *sub judice*, did not provide a sworn statement of the basis for his claim that his appellate counsel's representation was deficient. While defendant-appellant attached a sworn affidavit to his application, the affidavit indicates how his trial counsel was defective – not appellate counsel.

*State v. Suntoke*, Case No. CT2-13-0032 (5th Dist. Jul 24, 2015)(unreported, copy at State Court Record, ECF No. 14-1, PageID 876). Suntoke argues this was just a mistake in labeling on his part, but examination of the Affidavit in question shows that it complains only of omissions made by trial counsel (Affidavit, State Court Record ECF No. 14-1, PageID 827).

Suntoke does not question the existence of a relevant state procedural rule or of the fact that it was enforced against him. His objection would appear to be that it is not adequate. The adequacy of the state ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), *citing Henry v. Mississippi*, 379 U.S. 443, 446-48 (1965). The adequacy

of a state procedural bar is itself a federal question. *Cone v. Bell,* 556 U.S. 449 (2009), *citing Lee v. Kemna*, 534 U.S. 362, 375 (2002); see also *Coleman v. Thompson*, 501 U.S. 722, 736 (1991). The procedural rule here protects the State's legitimate interest in having the pleadings in a case reflect the claim actually being made. Proceedings under 26(B) are available only to raise claims of ineffective assistance of appellate counsel, not ineffective assistance of trial counsel claims. Here, the only complaints made in the Affidavit are of trial counsel performance.

On these two bases, Ground Two should be dismissed with prejudice.


**Ground Three: Judicial Bias**


In his Third Ground for Relief, Petitioner asserts the trial judge "was completely biased and prejudiced against the Petitioner." (Petition, ECF No. 8-2, PageID 255.) As proof, he cites the judge's failure to decide a motion to change venue and a *pro se* motion for additional discovery, failure to lower the bond, failure to prevent the prosecutor from making disparaging remarks to the press, failure to consider treatment in lieu of incarceration, failure to grant continuances, denial of the *pro se* motion to withdraw the no contest plea, denial of Petitioner's request to wear certain clothing which he asserted was a required religious practice, making the remark that Petitioner was "starting to play games with the Court by saying things"; and violation of the Ohio sentencing statutes. (Petition, ECF No. 8-2, PageID 255-88.)

Respondent argues this Ground fails to state a constitutional claim and is procedurally defaulted (Return, ECF No. 14, PageID 621-22).

The Court agrees with Petitioner that the Fourteenth Amendment is violated when a person is tried by a judge who is biased or prejudiced against him. *Tumey v. Ohio*, 273 U.S. 510 (1927);

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Williams v. Pennsylvania*, 579 U.S. ___, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016). The difficulty with Petitioner's position is that he asks this Court to speculate that the trial judge was prejudiced against him because of his race and religion, but offers no proof other than his claim that he is dark-skinned and a practicing Zoroastrian. Did the judge make any remarks disparaging dark-skinned people or Zoroastrians? Does the judge have a history of that sort of discrimination? No proof is offered other than the failure of several trial court motions.

In addition, this claim is procedurally defaulted. Ohio's method for disqualifying a Common Pleas Judge is by motion for disqualification filed with the Chief Justice. The record shows no such motion. All of the facts on which Suntoke relies in this Court were already in the record at the time of his direct appeal and this claim was not included in that appeal. The Magistrate Judge has already dealt with the claim that it was ineffective assistance of appellate counsel to omit this claim.

In the midst of arguing this claim, Petitioner blames the government for not shutting down the sites through which he obtained the child pornography and castigates the Ohio Supreme Court for its decision in *State v. Foster*, 109 Ohio St. 3d 1 (2006). What either of these two arguments has to do with judicial bias is not apparent.

Ground Three should be dismissed with prejudice.


**Ground Four: Ineffective Assistance of Both Trial and Appellate Counsel**


In his Fourth Ground for Relief, Petitioner asserts he received both ineffective assistance

of trial counsel and ineffective assistance of appellate counsel.[3]

Petitioner lists the following deficiencies in trial counsel Van Horn's performance:

1.  Failure to insist that Suntoke be allowed to see the original images on his laptop instead of a copy so as to dispute authenticity (Petition, ECF No. 8-2, PageID 290-91).

2.  Failure to hire a forensic expert to examine the laptop for hacking, tampering, or other illegal actions. *Id.*

3.  Failure to provide Suntoke with "various judgments pertaining to the Petitioner's type of case in order to enable Petitioner to form a Proportionality argument." *Id.*.

4.  Failure to file a motion to suppress for lack of jurisdiction and motion to suppress the search warrant. *Id*. at PageID 293-94.

5.  Failure to explain "options and ramifications" to Petitioner. *Id*. at PageID 295.

6.  Failure to explain that the State had to prove all three elements of the pandering charges. *Id.* at PageID 296.

7.  Brokering plea negotiations without permission. *Id.* at PageID 296.

Petitioner lists the following deficiencies in trial counsel Meyer's performance:

1.  Coercing Petitioner into pleading no contest. *Id.* at PageID 298.

2.  Failed to inform Petitioner that the State had to prove all three elements. *Id.* at PageID 303-04.

3.  Failure (along with Van Horn) to obtain medical records pertinent to

---

[3] It is difficult to discern where pleading of this claim begins in the Petition because there is no appropriate heading. The Magistrate Judge reads the claim as beginning at ECF No. 8-2, PageID 289.

sentencing.  (Petition, ECF No. 8-3, PageID 305.)

4.      Failure (along with Van Horn) to investigate Petitioner's upbringing for mitigation.  *Id.* at PageID 320.

5.      Failure to advise Petitioner that conviction could lead to deportation.  *Id.* at PageID 321.

6.      Failure to raise an allied offenses claim.  *Id.*

Petitioner lists the following deficiencies in the performance of appellate counsel Valeri Wiggins:

1.      Failure to raise as an assignment of error the failure to the State to prove all three elements of the charged offenses.  *Id.* at PageID 306.

2.      Failure to file a motion for bond reduction.  *Id.* at PageID 313.

3.      Failure to allow Petitioner to comment on the merit brief.  *Id.* at PageID 316.

Respondent defends against the claim of ineffective assistance of appellate counsel by pointing out two procedural defaults:  failure to properly file the 26(B) application and failure to appeal to the Ohio Supreme Court from denial of the 26(B) application.  (Return, ECF No. 14, PageID 622.)

Respondent groups the claims of ineffective assistance of trial counsel under subheadings (a) through (m).

a.      Failure to investigate tampering with evidence

Alleged to be procedurally defaulted by omission on direct appeal and from the petition for post-conviction relief.  *Id.* at PageID 623.

b.      Failure to argue proportionality

28

Alleged to be procedurally defaulted because not presented on direct appeal. *Id.* at PageID 624.

c.      Failure to file motions to suppress

Alleged to be procedurally defaulted because not raised on direct appeal or in post-conviction. *Id.* at PageID 524.

d.      Entering into plea negotiations without authorization

Alleged to be procedurally defaulted because not raised on direct appeal and omitted from appeal to the Ohio Supreme Court on post-conviction. *Id.* at PageID 625.

e.      Pressuring Suntoke to enter a no contest plea

Alleged to be procedurally defaulted because not raised on direct appeal, vaguely pleaded ("pressure tactics") in post-conviction, and abandoned on appeal to the Ohio Supreme Court. *Id.* at PageID 625-26.

f.      Failure to submit medical records or move for a forensic psychologist

Alleged to be procedurally defaulted because not presented on direct appeal and never presented in post-conviction. *Id.* at 626.

g.      Failure to appeal the bond

Alleged to be procedurally defaulted because never fairly presented to the Ohio courts. *Id.* at PageID 626.

h.      Failure to offer a clinical psychologist in mitigation at sentencing

Alleged to be procedurally defaulted because not presented on direct appeal or in post-conviction. *Id.* at PageID 627.

i.      Failure to advise regarding deportation

Alleged to be procedurally defaulted by failure to present either on direct appeal or in post-conviction. *Id.* at PageID 627.

j.      Failure to argue allied offenses of similar import

Alleged to be procedurally defaulted by failure to present either on direct appeal or in post-conviction. *Id.* at PageID 627-28.

k.      Failure to conduct pretrial discovery

Alleged to be procedurally defaulted by failure to present either on direct appeal or in post-conviction. *Id.* at PageID 628.

l.      Failure to advise regarding elements of the offense and lesser included offenses

Alleged to be procedurally defaulted by failure to present on direct appeal and abandonment in post-conviction on appeal to the Ohio Supreme Court. *Id.* at PageID 628-29.

m.     Failure to investigate potential character witnesses

Alleged to be procedurally defaulted because never presented to the Ohio courts. *Id.* at PageID 629.

In his Traverse, Petitioner argues with respect to this Ground and many others that Respondent "has kindly met the "CAUSE" prong under *Maupin* and *Strickland* as well as the deficient performance prong under *Strickland* when she stated 'it was on the record.'" (ECF No. 57, PageID 1751.) Respondent makes no such concession. The fact that an issue could have been raised on direct appeal but was not does not prove it was ineffective assistance of appellate counsel to fail to do so. That is only the first part of the deficiency prong. An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S.

745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

Suntoke claims he could not have appealed from denial of his 26(B) Application because the denial was not on the merits (Traverse, ECF No. 57, PageID 1751), but he offers no authority for that proposition. There is a myriad of reported cases in which defendants appealed from denials of 26(B) applications on procedural grounds where the Ohio Supreme Court either ignored the procedural default and decided the ineffective assistance of appellate counsel claim on the merits or where it considered and upheld the procedural default. *See, e.g., Franklin v. Anderson, supra*.

Petitioner denies (Traverse, ECF No. 57, PageID 1753) Respondent's claim that he was satisfied with his attorney (Return, ECF No. 14, PageID 623, citing Plea Hearing Tr.. ECF No. 14-2, PageID 1140, *et seq.*) The transcript reflects that the case was set for trial on that date, April 9, 2013, and a jury had already been summoned. There were two pending motions, for a change of venue and the *pro se* motion for discovery. Defense counsel Gregory Meyers withdrew the venue motion and indicated he was satisfied with discovery (ECF No. 14-2, PageID 1144). Assistant County Prosecutor Welch indicated Suntoke was prepared to enter a no contest plea to sixteen counts of pandering obscenity involving a minor and the parties would recommend a sentence of

seven years. *Id.* at PageID 1144-45. Judge Cottrill conducted a Rule 11 plea colloquy with Petitioner in which he explained the maximum penalties and the mandatory post-release control requirements. Suntoke answered that he understood the nature of the charges and was satisfied with the advice and assistance Meyers had given him. *Id.* at PageID 1149. Judge Cottrill explained that Suntoke was accepting the agreed sentence of seven years. *Id.* at PageID 1150. The judge explained the constitutional rights being given up including a right to trial by jury or by the court, the right to confront accusers and to compel witnesses to attend, the right to testify or not, and the right to appeal. *Id.* at PageID 1152-53. Having ascertained that Suntoke was not an American citizen, Judge Cottrill advised him of the possible deportation consequences of conviction. *Id.* at PageID 1153. The judge then took separate no contest pleas to each of the indictment counts agreed to in the plea agreement. *Id.* at PageID 1154-57. Mr. Welch then presented the stipulation that is quoted above and Meyers agreed there were no objections to the indictment as returned. *Id.* at PageID 1158-59. The judge then made a finding of guilt and referred the case for presentence investigation. *Id.* at PageID 1160. Suntoke then answered "Yes" to the questions whether he had discussed "all of this with Mr. Meyers" and felt he knew "what's going on." *Id.* at PageID 1160.

Having engaged in that colloquy with Judge Cottrill, Suntoke now says the claim that he "was satisfied with his Defense Trial Counsel is completely belied by the facts on record." (Traverse, ECF No. 57, PageID 1753.) He claims he filed a *pro se* request for continuance and new counsel the day before the plea and then

> At the Plea Hearing the Trial Counsel coerced and forced the Defendant to say "YES["] to all the questions put forward by the Judge in the Plea Colloquy. **It is to be noted here that the Petitioner was not on oath nor had he been sworn in**. The Trial Counsel tried to frighten and terrorize the Petitioner saying that if the Petitioner did not enter his NO CONTEST Plea the Prosecutor would ask for the maximum sentences regarding the counts in the Indictment which would mean 256 years incarceration. The

> Petitioner being 74 years old at that time was completely bewildered and consented to the "NO CONTEST" plea. Thus the Petitioner followed the Trial Counsel's advice against his own inclination to go for a Jury Trial. It is pertinent to note that right uptil [sic] the coercion the Petitioner was asking the Trial Counsel as to what questions he was going to ask the Jury (because that subject had never been discussed by the Trial Counsel with the Petitioner) and at that stage the Jury was there and was ready to be sworn in.

*Id.*(emphasis added). Petitioner seems not to understand what these admissions imply. He is saying in the Traverse that he was perfectly willing to lie repeatedly to a judge in open court to achieve a legal result. He reminds us he was not under oath, but of course his Traverse is also not sworn to. If he was willing to lie to Judge Cottrill, why would he not be willing to lie to this Court?

Suntoke's claim that he was coerced into pleading no contest is a claim, depending as it does on evidence outside the record, which could have been raised in post-conviction proceedings under Ohio Revised Code § 2953.21. When Suntoke's Petition is examined, he claims Meyers was ineffective because he was not prepared to put on a defense that the only thing the evidence proved was possession of child pornography (Petition, Return of Writ, ECF No. 14-1, PageID 939-43). He quotes extensively email correspondence between Meyers and Van Horn in which Meyers points out the likelihood of conviction which Suntoke attempts to undermine by his theory that the State had to prove all three elements under the indictment and that all he was guilty of was possession. Nowhere does he claim that Meyers coerced him in any way other than presenting the likely consequences of going to trial. In particular, he nowhere claims that Meyers told him to lie to Judge Cottrill during the Rule 11 plea colloquy. Thus, Suntoke has procedurally defaulted on his claim that his plea was not knowing, intelligent, and voluntary because he never presented that claim in his post-conviction petition.

If this Court were to reach the merits of that claim, it should be rejected. A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the

totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

The circumstances in which Petitioner found himself on April 9, 2013, would certainly be

distressing to anyone. He had been caught with over two thousand images of child pornography on his computer which had been downloaded from the internet. Downloading consists of copying something from an internet website onto a storage medium, either a computer hard drive or a removable medium. *United States v. Romm*, 455 F.3d 990, 1006, n. 3 (9ᵗʰ Cir. 2006)Downloading is sufficient to constitute reproducing, thereby satisfying the statutory element. *Cooper v. Smith*, Case No. 1:11-cv-699, 2013 WL 6119223 at *14 (N.D. Ohio Nov. 21, 2013). If convicted of all counts, Petitioner faced a maximum sentence of over two hundred years in prison. Accepting a seven-year prison sentence would certainly be a hard choice for a seventy-four year-old man with no prior criminal record, but it was a very reasonable choice given the options. Suntoke's plea of no contest was knowing, intelligent, and voluntary.

Petitioner spends considerable time in his Traverse discussing the subclaims of ineffective assistance of trial counsel as they are summarized in the Return of Writ (ECF No. 57, PageID 1753-1811.)

Under "failure to investigate" he claims "Ohio has a 'best evidence'[4] rule that is requiring the Prosecutor to bring forth the 'original evidence.'" *Id.* at PageID 1753. He wanted his attorney to insist the prosecutor produce the original images and videos in discovery. He hypothesizes that a forensic analysis could have been done of the original which might have shown tampering and might have produced proof of unconstitutional hacking. This claim, however, is completely hypothetical: Suntoke has no proof of what a forensic analysis would have shown. Thus the claim is without merit. It is also procedurally defaulted because it was not presented in post-conviction.

Under "failure to argue proportionality," Suntoke claims he asked his attorneys to find similar cases to his to show lesser sentences. This argument ignores the fact that there was an

---

[4] Ohio's best evidence rule, Ohio R. Evid. 1002, requires that the content of a document be proved by producing the original. This rule is ubiquitous in common law jurisdictions. But it only applied at trial, not in pretrial discovery.

agreed sentence of seven years.

The subclaim is barred by failure to present it in post-conviction. Respondent argues it could not now be presented to any Ohio court because of the bar of *res judicata.* (Return, ECF No. 14, PageID 624). Petitioner responds that "*res judicata* is a bar only to voidable errors" and this Court has the "power to overturn the conviction which voids the conviction therefore *res judicata* does not apply under any circumstances." (Traverse, ECF No. 57, PageID 1756.) Petitioner cites *Strickland, supra,* for that proposition, but *Strickland* says nothing of the kind. Ohio's criminal *res judicata* doctrine as enunciated in *State v. Perry*, 10 Ohio St. 2d 175 (1967), provides that a constitutional claim which could have been presented at one stage of a criminal case, e.g. direct appeal, is barred from being presented at a later stage, post-conviction, for instance. The Sixth Circuit has repeatedly upheld that doctrine as an adequate and independent state basis of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994).

Under "failure to file motion to suppress," Petitioner complains of both failure to file such a motion to challenge jurisdiction and failure to file to suppress the results of the search. Respondent asserts these claims are barred by procedural default because they were not raised on direct appeal and, to the extent they depend on evidence outside the record, were also not made in post-conviction. In his Traverse, Suntoke argues only the merits (ECF No. 57, PageID 1756), but the subclaim is meritless as well as defaulted. The fact that Petitioner was arrested without an arrest warrant and held without a warrant being issued until the indictment was returned would not deprive the Common Pleas Court of jurisdiction. A law enforcement officer who has probable cause to believe a person has committed a felony has authority to arrest without a warrant. That

probable cause existed as soon as the offending images and videos were seen on Petitioner's computer. The appropriate process after an arrest without a warrant is to take the arrestee before a judge who had committing authority. From the record it appears that the court that exercised that authority in this case was the Zanesville Municipal Court as that is the court in which Suntoke waived preliminary hearing.

Petitioner offers no argument on the merits of the omitted motion to suppress the fruits of the search pursuant to search warrant.

Under "entering into plea negotiations without authority," Petitioner claims he never authorized Van Horn to engage in plea negotiations. Although this claim was raised in post-conviction, it was abandoned on appeal to the Ohio Supreme Court and is therefore procedurally defaulted. But Petitioner has also shown no merit. He cites no cases in which an attorney was held to have performed deficiently by discussing possible plea bargains with the prosecutor. Petitioner has likewise shown no prejudice because he has not even suggested he could have received a better plea bargain without negotiation or that he had any viable defense.

The subclaim asserting that he was coerced into entering a plea is dealt with above.

Under "failure to file medical records or move for a forensic psychologist" Petitioner believes Respondent has conceded cause because the Return states that "to the extent the claim is within the record, he should have presented it on direct appeal." (Traverse, ECF No. 57, PageID 1758, quoting Return, ECF No. 14, PageID 626.) This does not appear to have been a claim which could have been presented on direct appeal: although the absence of medical records and of a motion for a separate forensic psychologist would have been apparent from the face of the record, there would not have been evidence of why these omissions constituted ineffective assistance of trial counsel. Thus, these claims should have been presented in post-conviction and supported by

evidence outside the record, but they were not and are therefore procedurally defaulted. Nor has Petitioner shown they have any merit because he has not shown what his medical records or a separate psychologist would have proved to excuse or mitigate his conduct. A psychiatric diagnosis of pedophilia might help to explain why Petitioner collected more than two thousand images of children engaged in sexual conduct, but it would not have been a defense.

Under "failure to appeal the bond," Petitioner claims he can show lower bonds entered for more serious charges in the same court. But he does not offer any cases in which the appellate court in question lowered a bond in a case like his with a defendant in similar circumstances (e.g., a septuagenarian with citizenship in a foreign nation facing a possible long sentence that would mean life in prison). Moreover, this subclaim is procedurally defaulted in that it was never raised on either direct appeal or in post-conviction.

The subclaim of "failure to offer a clinical psychologist in mitigation at sentencing," is procedurally defaulted because it was never presented in post-conviction. It is also without merit because Petitioner offers no proof of what a clinical psychologist would have testified to or why that testimony would have been so compelling that it was deficient performance to fail to present it.

Petitioner claims he was not advised about deportation possibilities by his attorneys. Essentially arguing lack of prejudice, Respondent noted that "Suntoke was advised prior to his plea, and acknowledged his understanding, that a plea of no contest could have the consequence of deportation." (Return, ECF No. 14, PageID 627.) In his Traverse, Petitioner responds

> **The Respondent AAG has made a complete wrong statement when she says "that Suntoke was advised prior to his plea and acknowledged his understanding that a plea of no contest could have the consequences of deportation" This is completely untrue**. The first time that the Petitioner ever heard this statement was at the plea hearing during the plea colloquy.

(Traverse, ECF No. 57, PageID 1760, emphasis in original.) This is a good example of Petitioner's penchant for making over-the-top assertions. His statement is completely consistent with Respondent's claim that Suntoke "was advised." Respondent does not claim he was advised by his lawyers. Instead Assistant Attorney General Reese points out that he was advised by Judge Cottrill of possible deportation consequences. At that point, Suntoke was free to reject the plea agreement, which he did not do. Hence there is no prejudice from failure of his counsel to advise him on this matter.

Moreover, this subclaim is also procedurally defaulted because it was not raised either on direct appeal or in post-conviction.

Petitioner asserts counsel were ineffective for failure to argue that his offenses of conviction were allied offenses of similar import which should have been merged under Ohio Revised Code § 2941.25. This claim could have been, as Respondent notes, raised on direct appeal because it depends entirely on the appellate record (Return, ECF No. 14, PageID 627-28). Suntoke's only response is to say that "[m]any many Courts have held that failure to argue "allied offenses of similar import constitutes deficient performance and prejudice to the Defendant **even though the Trial Judge passes concurrent sentences.**" (Traverse, ECF No. 57, PageID 1761).

The Magistrate Judge agrees that this can be an important issue and that it would be ineffective assistance of trial counsel or ineffective assistance of appellate counsel to fail to argue a colorable claim of allied offenses. But this subclaim should also be dismissed because it is procedurally defaulted, having never been raised on direct appeal, and is also without any demonstrated merit: Petitioner does not even attempt to show that any of his offenses of conviction should be merged under Ohio Revised Code § 2941.25. While they are offenses of similar import, they were committed at different times and it requires a separate animus to download each internet

file of an image or video. Or if not, then where is the evidence that the files were not downloaded separately?

Petitioner's subclaim about failure to conduct pretrial discovery seems to be based entirely on the fact that, when reviewing discovery produced by the prosecution, Suntoke found some pages were missing (Traverse, ECF No. 57, PageID 1761). There is no merit to the subclaim because there is no showing of prejudice and the subclaim is procedurally defaulted because it was never presented to the Ohio courts.

Subclaim $l$ asserts trial counsel did not advise Petitioner of the elements and did not discuss the lesser-included offense of possession of child pornography. Respondent points out that Petitioner admitted to Judge Cottrill that he understood the charges. If that statement was true, then he suffered no prejudice from the failure to explain. If that statement was false, then Petitioner stands before this Court admitting that he lied to the trial judge in the plea colloquy. The subclaim is also procedurally defaulted because Petitioner abandoned it in his appeal to the Ohio Supreme Court in post-conviction.

Petitioner's last subclaim is that he received ineffective assistance of trial counsel when trial counsel "failed to investigate potential character witnesses." Respondent notes that this subclaim was never raised in the Ohio courts (Return, ECF No. 14, PageID 629). In his Traverse, Petitioner argues he wanted counsel to call character witnesses at sentencing and was told it would have no effect on the sentence. This was accurate advice since there was an agreed sentence. Petitioner provides no substance to the subclaim because he does not identify any such character witnesses or what they would have testified to. The subclaim is also procedurally defaulted because he never raised it in any state court proceeding.

Incredibly, Petitioner also accuses trial counsel of ineffective assistance for not

> get[ting] the names of the victims of the crime committed by the
> Petitioner in order to take advantage of the Confrontation Clause as
> the Petitioner steadfastly maintained that he had never come into
> contact in any manner whatsoever with the victims, participants
> etc[.] in the images/videos and the Petitioner had absolutely no
> knowledge of them whatsoever in any manner.

(Traverse, ECF No. 57, PageID 1763.)   Petitioner appears to be oblivious to the usual consequences of having the victims portrayed in child pornography appear at sentencing.   Courts have many times awarded restitution in the millions of dollars to these victims.   See, e.g., *Paroline v. United States*, 572 U.S. 464 (2014)(describing devastating and life-long effects of having been a child pornography victim).   Presumably any such victim would have admitted never knowing Suntoke but would then tell, often in excruciating detail, the trauma he or she suffered by being subjected to rape on camera.   No lawyer who had any loyalty to his client would subpoena such a witness.

Following discussion of the subclaims in Ground Four, Petitioner writes many pages making other claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel which have not been pleaded in the Petition and to which Respondent has not had an opportunity to respond (Traverse, ECF No. 57, PageID 1764-1811).   The Court declines to adjudicate this string of miscellaneous claims which are not related by Petitioner's writing to any claim made in the Petition.   The Traverse in a habeas corpus case is not an appropriate place to introduce new claims that were not pleaded in the Petition and to which the Respondent has not had an opportunity to plead.   See *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir 2005) (claims first raised in a traverse rather than in a habeas petition were not properly before the district court); see also *Jalowiec v. Bradshaw*, 657 F.3d 293, 311-12 (6th Cir. 2011).

**Ground Five:  Warrantless Arrest**

In his Fifth Ground for Relief, Suntoke complains that he was arrested by police officer Hill without a warrant.  Petitioner's theory is that the entire case is the "fruit" of this "poisonous tree." (Petition, ECF No. 8-3, PageID 324-25.)

Respondent asserts this claim is forfeited by the no contest plea and is in any event procedurally defaulted because it was never presented to the state courts (Return, ECF No. 14, PageID 630-31).

Petitioner's response that this is a jurisdictional claim not subject to forfeiture is dealt with above.  Suntoke's response to the procedural default defense is that "cause and prejudice are plain to see."  (Traverse, ECF No. 57, PageID 1814.)  That does not respond to the claim that he never raised this ground in the state courts at all and particularly in those proceedings where he was acting *pro se*.

If the Court were to reach the merits, it should find this claim is without merit. A warrantless arrest on plain view of probable cause – the images and videos on the computer – is not unconstitutional.  There is no constitutional obligation to issue a post-arrest warrant so long as the arrestee is brought before a committing magistrate within a reasonable time.  Once that appearance has occurred, a defendant is not being held on an arrest warrant, but on commitment papers from the court of initial appearance.  After preliminary hearing or waiver of that hearing as happened here, a defendant is held on bind-over papers from the initial appearance court.  And once an indictment has been handed down, a defendant will be held on order of the Common Pleas Court or released on bond to that court.  *Illinois v. Gates,* 462 U.S. 213 (1983), on which Petitioner relies, is a search warrant case, not a case about warrantless arrest.

**Ground Six:  Improperly Issued Search Warrant**


In his Sixth Ground for Relief, Suntoke claims Detective Hill's affidavit for search warrant was defective because it claimed to be based on "independent investigation."  (Petition, ECF No. 8-3, PageID 326-29.)

Respondent asserts this claim is forfeited by the no contest plea and procedurally defaulted by failure to include it in the petition for post-conviction relief (Return, ECF No. 14, PageID 632). The Traverse makes no response to either of these defenses except to argue Respondent has conceded cause by pointing out this claim was not raised on direct appeal (Traverse, ECF No. 57, PageID 1815-17).  For reasons already given, the no contest plea forfeited this claim and it is procedurally defaulted by not being pled in post-conviction.


**Ground Seven:  No Record of a Factual Basis for the Conviction**


In his Seventh Ground for Relief, Petitioner claims that there is no "[t]here is no evidence in the Plea Colloquy as the Plea Colloquy does not comply with the requirements of [Ohio] Cr[iminal] Rule 11 regarding acceptance of a plea."  (Petition, ECF No. 8-3.)  Petitioner notes that a number of courts have insisted on establishment of a factual basis for a conviction when a defendant protests his innocence at the time the plea is taken.

This Ground is refuted by the record; the facts stipulated to by the parties and read into the record by the prosecutor are more than enough to ground a conviction and Petitioner never claimed to be innocent during the plea colloquy.  As Respondent notes, this claim could have been

presented on direct appeal but was not and is therefore procedurally defaulted.

**Ground Eight: Failure of the Trial Court to State the Elements of the Offense**

In his Eighth Ground for Relief, Petitioner complains that the trial court never stated the elements of the offense during the plea colloquy (Petition, ECF No. 8-3, PageID 331). Respondent asserts this claim is procedurally defaulted because it is evidenced by the record but was not raised on direct appeal (Return, ECF No. 14, PageID 633).

Petitioner replies that the Answer concedes the "cause" prong of *Strickland*. For reasons already given, this argument is unavailing: Petitioner has not shown that this would have been a stronger argument on appeal than the arguments actually made. The claim is also completely undermined by Petitioner's admission during the plea colloquy that he understood the nature of the offenses.

Petitioner relies on *Henderson v. Morgan,* 426 U.S. 637 (1976), where issuance of the writ was upheld when there was no proof in the record that the petitioner had the requisite *mens rea* for second-degree murder. The *mens rea* required for conviction of the offenses with which Suntoke was charged is knowledge of the character of the material or performance involved. We are not dealing here with the *mens rea* required for a single act of second-degree murder. The stipulated facts were that Petitioner's computer had more than 2000 images or videos of children engaged in sexual conduct, i.e., not nudity, but "fellatio, cunnilingus, vaginal intercourse, and anal intercourse." While the stipulation of facts does not expressly say that Suntoke knew these were children engaged in sex, he cannot plausibly claim that he did not. Omission of express statement of the *mens rea* element is therefore at most harmless error.

**Ground Nine:  Failure to Convict of Lesser Included Offense**

In his Ninth Ground for Relief, Santoke claims the trial court violated *North Carolina v. Alford*, 400 U.S. 25 (1970), which allows acceptance of a guilty plea from a defendant who claims to be innocent if there is a "strong factual basis for the plea."

It bears repeating that Suntoke never made a claim of innocence during the plea colloquy. Nor does *Alford* require a state court judge to *sua sponte* convict of a lesser included offense when he or she has received a valid no contest plea to the greater offense.  Moreover, this claim is procedurally defaulted by its omission from the direct appeal.

**Ground Ten:  Invalid No Contest Plea**

In his Tenth Ground for Relief, Suntoke claims the trial judge violated his constitutional rights under *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969)(Petition, ECF No. 89-3, PageID 333-34).

The frivolousness of this claim is demonstrated by the text of the claim itself.  The Petition quotes the plea colloquy and then *Boykin's* language about the rights in question.

> Page 12 Lines 19- 20. "You are giving up your right at trial not to take the witness stand."
>
> Boykin's First mandate against self incrimination.
>
> Page 12 Lines 4- 5. "You are giving up your right to have a jury trial".

> Boykin's Second mandate of trial by jury.
>
> Page 12 Lines 9- 12. "You are giving up your right to confront and have your attorney cross examine witnesses who testify against you at trial."
>
> Boykin's Third mandate of confronting your accuser.

*Id.* at PageID 334. All of the rights recited by the trial judge are the linguistic and legal equivalent of the parallel rights in *Boykin*. To claim that "jury trial" and "trial by jury" are not linguistically and legally equivalent is a flat-out violation of Fed. R. Civ. P. 11.

The claim is as well procedurally defaulted by its omission from the direct appeal.

**Ground Eleven: Failure to Obtain Determination of Probable Cause Post-Arrest**

In his Eleventh Ground for Relief, Petitioner claims Detective Hill violated his constitutional rights under *Gerstein v. Pugh,* 420 U.S. 103 (1975), by not obtaining a post-arrest determination of probable cause (Petition, ECF No. 8-3, PageID 335).

Respondent defends on the grounds this claim was waived by the no contest plea and is procedurally defaulted by failure to present it on direct appeal (Return, ECF No. 14, PageID 636).

Petitioner responds that failure to obtain the probable cause determination voids the whole case, but *Gerstein* does not stand for that proposition. While the Magistrate Judge agrees with the Respondent that the no contest plea waives this argument, it is also true that Suntoke waived his right to a post-arrest determination of probable cause when he waived a preliminary hearing.

Ground Eleven is both without merit and procedurally defaulted.

**Ground Twelve:  Violation of Speedy Trial Rights**

In his Twelfth Ground for Relief, Petitioner claims his constitutional right to a speedy trial was violated.  He argues this case entirely in terms of the Ohio speedy trial statute, Ohio Revised Code § 2945.71, and not in terms of the constitutional right to a speedy trial in the Sixth Amendment  (Petition, ECF No. 8-3, PageID 336-41).   The Ohio statutory and federal constitutional rights are not coextensive:  Ohio's deadline are much stricter.

Respondent defends on the ground this claim is waived by the no contest plea and procedurally defaulted by failing to raise it on direct appeal (Return, ECF No. 14, PageID 636-37).

Without citation of any authority, Petitioner claims in his Traverse that failure to provide a speedy trial violates the Fifth Amendment and is "jurisdictional and cannot be waived" under the authority cited by Respondent.

This claim is both forfeited by the plea and procedurally defaulted because it could have been and was not raised on direct appeal.

**Ground Thirteen:  Denial of a Continuance to Obtain New Counsel**

In his Thirteenth Ground for Relief, Suntoke claims his due process rights were violated when the trial judge denied a continuance so that new counsel could be substituted (Petition, ECF No. 8-3, PageID 342-46.)

Respondent asserts this claim is not cognizable in habeas corpus and is barred by Suntoke's procedural default in presenting it to the state courts (Return, ECF No. 14, PageID 637).  Petitioner

responds by claiming the Warden has again conceded cause, but that is not so for the reasons already given.

The trial was set for April 9, 2013. After noon on April 8, 2013, attorney Elizabeth Gaba moved on Petitioner's behalf for a continuance. She represented that she had been contacted by a representative of Mr. Suntoke as early as November 2012, but no arrangement for representation was made until April 4, 2013 (Return of Writ, ECF No. 14-1, PageID 702). Judge Cottrill held a hearing on the motion and then denied it without stating any reasons. *Id.* at PageID 705.

Without reaching the merits of this claim, the Magistrate Judge concludes it is procedurally defaulted by failure to present it on direct appeal.

## Ground Fourteen: Ineffective Assistance of Trial Counsel/Motion to Suppress

This claim duplicates a subclaim made under Ground Four, *supra*, and should be dismissed on the same basis.

## Ground Fifteen: Violation of the Vienna Convention

In his Fifteenth Ground for Relief, Petitioner asserts that the Zanesville Police violated his rights under the Vienna Convention by refusing to allow him to contact the Indian consulate upon his arrest and that trial and appellate counsel were ineffective for failing to raise this claim (Petition, ECF No. 8-3, PageID 351-54).

Respondent asserts this claim is forfeited by the no contest plea and procedurally defaulted because it has never been presented to the state courts. Petitioner responds with his customary claim that the Respondent has admitted cause, but this is not so for reasons already given.

Moreover, this claim does not depend on the appellate record which would not show whether a request had been made under the Vienna Convention. As a matter outside the appellate record, it should have been raised in post-conviction, but was not.

**Ground Sixteen: Violation of Privacy Rights by Hacking into Petitioner's Computer**

In his Sixteenth Ground for Relief, Petitioner claims the State violated his privacy rights by hacking into his personal computer when he had not enabled file sharing and had his computer password protected (Petition, ECF No. 8-3, PageID 354-55).

Respondent asserts this claim is waived by Petitioner's no contest plea and procedurally defaulted by failure to present it to the state courts (Return, ECF No. 14, PageID 639-40). Petitioner replies that the default is excused by the ineffective assistance of trial counsel and ineffective assistance of appellate counsel, but for reasons already given, those claims are also procedurally defaulted.

To the extent Suntoke is raising a Fourth Amendment claim, such claims are not cognizable in habeas corpus. *Stone v. Powell*, 428 U.S. 465, 495 (1976)(holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"). To the extent Suntoke is attempting to raise a substantive due process claim, the Supreme Court has never extended that right to the possession of child pornography. Compare *New York v. Ferber*, 458 U.S. 747 (1982), with *Stanley v. Georgia*, 394 U.S. 557 (1969).

**Ground Seventeen: Ineffective Assistance of Trial Counsel:  Failure to File a Motion Regarding a Defense**

In his Seventeenth Ground for Relief, Petitioner claims he was provided ineffective assistance of trial counsel when his trial attorneys did not file a motion raising an *Ignorantia Facti Excusat* defense or a defense that, as an Indian citizen, Petitioner was ignorant of American law.

The Magistrate Judge disagrees with Respondent's assertion that this claim could have been raised on direct appeal.  The claim depends on matter outside the record, to wit, Petitioner's assertion that possession of child pornography is legal in India and that his mental condition impacted his learning that it was not legal in America.  However, this claim could have been raised in post-conviction but was not and is procedurally defaulted on that basis.

For Petitioner's benefit, the Magistrate Judge notes that the companion legal maxim to *ignorantia facti excusat* is *ignorantia legsi neminem excusat* and Petitioner's claim appears to be that he was ignorant of American law.

**Ground Eighteen:  Cruel and Unusual Punishment**

In his Eighteenth Ground for Relief, Petitioner claims that his sentence of seven years amounts to cruel and unusual punishment (Petition, ECF No. 8-3, PageID 359-61).

Respondent defends on the ground that this claim was available on the direct appeal record but was not raised there and is therefore procedurally defaulted.  Respondent also defends on the merits, noting that a sentence within the maximum provided by law is not cruel and unusual (Return, ECF No. 14, PageID 640-41).

The Traverse contains a lengthy recitation of various cases in which courts have enunciated

principle about disproportionate sentencing (Traverse, ECF No. 57, PageID 1894-1950). None of them is an opinion of the United States Supreme Court that clearly establishes a sentence such as was agreed to and imposed in this case is cruel and unusual.

Ground Eighteen is both procedurally defaulted and without merit.


## Ground Nineteen: Unreasonable Factual Determination by Zanesville Municipal Court

In his Nineteenth Ground for Relief, Petitioner claims the Zanesville Municipal Court made an unreasonable determination of fact in binding him over to the grand jury when he had not had the rights he was waiving explained to him by the public defender or the judge (Petition, ECF No. 8-3, PageID 362-64).

Respondent defends on the ground this claim is not properly pleaded. The Court will overlook any pleading deficiency because Petitioner is proceeding *pro se*.

Respondent also defends on the ground this claim was forfeited by the no contest plea and procedurally defaulted for failure to present it to the state courts (Return, ECF No. 14, PageID 642-4.2) Those defenses are both well taken. Petitioner's claim in the Traverse that the due process violations began in Zanesville Municipal Court does not speak to the authority that a valid no contest plea waives prior constitutional violations. The claim is also procedurally defaulted because it could have been raised on direct appeal or in post-conviction to the extent it depends on evidence outside the record, but it was not.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 2, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

Given the prolixity of pleadings already filed in this case, Petitioner is notified of the requirements of S. D. Ohio Civ. R. 7.2(a)(3) which requires that when a memorandum in excess of twenty pages is filed, it must be accompanied by a table of contents and a summary of not more than five pages of the principal arguments and authorities. Failure to comply may result in striking any objections.